**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 30 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

DONALD E. ALEXANDER,

　　　　　Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

　　　　　Defendant-Appellee.

No.  03-7065
(D.C. No. CV-01-670-S)
(E.D. Okla.)

**ORDER AND JUDGMENT**　*

Before **EBEL** , **HENRY** , and **MURPHY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore

ordered submitted without oral argument.

---

*　　This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Donald E. Alexander appeals from an order of the district court affirming the Commissioner's determination that he is not entitled to Social Security disability benefits. We reverse and remand for further proceedings.

We review the Commissioner's decision to determine whether her factual findings were supported by substantial evidence in light of the entire record and to determine whether she applied the correct legal standards. See Castellano v. Sec'y of Health & Human Servs., 26 F.3d 1027, 1028 (10th Cir. 1994). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quotations omitted). "In addition to a lack of substantial evidence, the [Commissioner's] failure to apply the correct legal standards, or to show us that she has done so, are also grounds for reversal." Winfrey v. Chater, 92 F.3d 1017, 1019 (10th Cir. 1996). In the course of our review, we may "neither reweigh the evidence nor substitute our judgment for that of the agency." Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991).

Mr. Alexander was originally awarded benefits for a closed period from September 30, 1989 through January 26, 1992. The Commissioner then determined he had improved to the point that, while he could not return to his previous work, he could do light work subject to several restrictions.

Mr. Alexander again applied for benefits in 1995 alleging disability as of September 1989 due to a torn rotator cuff and ruptured cervical discs. The administrative law judge (ALJ) declined to reopen Mr. Alexander's previous application and, thus, considered his application as claiming disability as of the date of the ALJ's decision finding medical improvement, January 28, 1993. The ALJ determined that Mr. Alexander was not disabled at step four of the five-step sequential process, see Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988), as he could return to his prior work as a service salesman.

On appeal, Mr. Alexander argues that the ALJ erred in determining that he could return to his previous relevant work because the ALJ failed to provide any analysis of the demands of his past relevant work. He contends that the ALJ's conclusion that he has the residual functional ability to perform the full range of medium work is not supported by substantial evidence; and that the ALJ did not properly support his credibility determination as he set forth boiler plate reasons, which are contrary to the record.

"At step four, the ALJ engages in a comparative assessment of the claimant's residual functional capacity and the demands of the work the claimant has done in the past to determine whether the claimant can do his past relevant work." Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997). In Winfrey, this court articulated the three phases the ALJ must address to make the step-four

-3-

determination. In the first phase, the ALJ must evaluate the claimant's residual functional capacity (RFC). 92 F.3d at 1023. In the second phase, the ALJ must examine the demands of the claimant's past relevant work. Id. In the third phase, "the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." Id. Specific findings are required at all phases. Id. The burden of proving disability remains with the claimant at step four; however, the ALJ does have a duty "of inquiry and factual development." Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 361 (10th Cir. 1993).

At phase one, the ALJ determined that Mr. Alexander had the RFC to perform all "work-related activities except for work involving lifting and/or carrying more than 50 pounds occasionally and 25 pounds frequently," with no limitations on sitting, standing and walking. Aplt. App. at 22-23. The record does not support this conclusion.

In 1995, Dr. Howard, an examining physician, stated that he suspected Mr. Alexander "could not do heavy physical labor in terms of lifting anything more than 25 pounds . . ., however, he could certainly do moderate to light to sedentary type work." Id. at 130. In 1996, Dr. McCabe, Mr. Alexander's treating physician, opined that Mr. Alexander could perform light duty with no lifting of more than twenty-five to thirty pounds, and that infrequently. Id. at 169.

Dr. McCabe reiterated that opinion in 1997, when he restricted Mr. Alexander from work "of a heavy physical nature." Id. at 174. At that time, however, he did feel that Mr. Alexander could lift fifty pounds occasionally. Id. In 1998, Dr. Levin examined Mr. Alexander and concluded that he was precluded from heavy work. Id. at 234. Dr. Bowe, Mr. Alexander's chiropractor, opined, in 1997, that Mr. Alexander was permanently precluded from working. Id. at 152. [1]

We cannot say that substantial evidence supports the ALJ's determination that Mr. Alexander could do medium work. [2] In reaching his conclusion, the ALJ rejected Dr. Howard's opinion noting that (1) his examination did not support the lifting restriction and (2) Dr. Howard had not said that heavy lifting would cause any further injury. However, Dr. Howard did not discredit Mr. Alexander's reports of pain and he noted that Mr. Alexander has had surgeries on his neck and shoulders. He imposed the lifting restrictions based on Mr. Alexander's shoulder and neck impairments.

---

[1]     Dr. Yates also proffered an opinion that Mr. Alexander was " totally disabled from his previous employment at Western Uniform and Towel Services" as he could not do vigorous manual labor. Aplt. App. at 202. Dr. Yates' opinion, however, was proffered in 1992 and is outside the relevant time period. Dr. Borne also submitted an opinion to the Appeals Council that Mr. Alexander was limited to sedentary work. Id. at 241. This opinion was dated in 1999, after the ALJ issued his opinion. It is not clear whether Dr. Borne based his opinion on his treatment of Mr. Alexander during the relevant time period, or as of 1999. Therefore, we cannot credit this opinion.

[2]     Medium work involves lifting or carrying of twenty-five pounds frequently with occasional lifting of fifty pounds. 20 C.F.R. § 404.1567(c).

The ALJ appears to have discredited Dr. McCabe's restrictions because Dr. McCabe limited Mr. Alexander to no more than twenty-five to thirty pounds at one point, id. at 169, and later increased that to thirty to thirty-five pounds, id. at 174.[3] The ALJ makes much of the fact that Mr. Alexander has no nerve root impingement, few lower back restrictions, and walks well. The lifting restrictions are impacted by Mr. Alexander's shoulder and neck impairments, as well as his lower back impairment. Dr. Levin, an electrodiagnostician, proffered a twenty-eight page analysis in which he concluded that Mr. Alexander was not "physically capable of working in . . . physically arduous employment," id. at 230, and "should be precluded from heavy work," id. at 231.

The record is not clear as to whether Mr. Alexander can perform medium work, and, thus, it appears that the record must be further developed as to this issue. See Henrie, 13 F.3d at 360-61 (ALJ's duty to develop record is heightened when claimant not represented by counsel). Further, the ALJ did not adequately explain his decision to discredit Mr. Alexander's treating physician's opinions that he could not do medium work. Once an ALJ determines that he will not credit the opinions of the claimant's treating physicians, he must set forth specific reasons for doing so. See Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)

---

[3] The ALJ misstated the record when he reported that Dr. McCabe stated Mr. Alexander could lift forty to forty-five pounds.

(ALJ cannot reject treating source's opinion without identifying "specific, legitimate reasons" for doing so) (quotation omitted). In so doing, the ALJ must explain the weight he will give the treating physician's opinion after considering:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (quotation omitted); see also 20 C.F.R. § 404.1527(d)(2).

At phase two of the Winfrey analysis, the ALJ must examine the demands of the claimant's past relevant work. 92 F.3d at 1023. As the ALJ determined that Mr. Alexander could return to his previous work as a service delivery salesman, we look only at the requirements of that position. [4] The only evidence

---

[4] The ALJ also mentioned that Mr. Alexander had worked for six weeks at light duty taking emblems off shirts. Mr. Alexander stated that this was a trial work period ordered by a physician. He did not explain why this trial work period was not successful. The ALJ did not reject Mr. Alexander's explanation of this work period. In any event, the ALJ could not consider this job as previous relevant work. See 20 C.F.R. § 404.1592(a) (trial work period permits disabled claimant to test ability to work and still be considered disabled; work may be performed "in as many as 9 months" without ending disability; see also Lacy v. Sullivan, 810 F. Supp. 1038, 1041 (S.D. Iowa 1992) (ALJ cannot count work performed during the trial work period as past relevant work).

setting forth the demands of that job is found in Mr. Alexander's testimony. He testified that when he was employed as a service delivery salesman, he drove a delivery truck and delivered and picked up uniforms, mats, dirty towels, etc. Aplt. App. at 32. In the course of that job, he loaded and unloaded the truck which required lifting, at a maximum, between fifty and one hundred pounds. Id.

The ALJ did not obtain any evidence as to how the job is performed in the national economy. Therefore, relying on Mr. Alexander's testimony, it is clear that he performed this job at the heavy exertional level, which involves the frequent lifting of no more than one hundred pounds with frequent lifting of fifty pounds. 20 C.F.R. § 404.1567(d).

In the third phase of the Winfrey analysis, the ALJ must determine whether the claimant can meet the job demands of his previous relevant work despite his limitations as found in phase one. 92 F.3d at 1023. Clearly, Mr. Alexander cannot perform his previous relevant work. The ALJ's failure to make the complete Winfrey analysis resulted in a conclusion that is not supported by the record.

As the ALJ did not perform the proper legal analysis, we must remand this case for further proceedings. The judgment of the district court is REVERSED and this case is REMANDED to the district court with instructions to remand, in turn, to the Commissioner for further development of the record. [5]

Entered for the Court

David M. Ebel
Circuit Judge

---

[5] Mr. Alexander also challenges the ALJ's determination of his credibility. Because the ALJ rested his credibility determination, in part, on his rejection of the treating physician's opinions and the medical evidence, we anticipate that, on remand, the ALJ will redetermine this factor also.